Argued December 7, 1978, affirmed April 3, 1979

HELD, *Appellant-Cross-Respondent,*
*v.*
PRODUCT MANUFACTURING
COMPANY et al, *Respondents-Cross-Appellants.*
and
HIGHFIELD, *Respondent.*
(No. A 76-04-05165, SC 25365)
592 P2d 1005

William B. Murray, Portland, argued the cause for appellant/cross-respondent. With him on the briefs was Hollis Ransom, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondents/cross-appellants Product Manufacturing Company and Duane Remmen. With him on the briefs were Donald J. Willis, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Fred A. Granata, of Dressler and Granata, Portland, argued the cause and filed a brief for respondent Highfield.

Before Denecke, Chief Justice, and Holman, Howell and Lent, Justices.

HOWELL, J.

**HOWELL, J.**

Plaintiff filed an action in two counts against defendants; the first count alleged common law fraud and the second a violation of the Oregon Securities Act as it existed in April, 1975. The defendants demurred to both counts on the grounds they failed to state a cause of action. The trial court sustained the demurrer to the second count and overruled the demurrer to the first count. Plaintiff moved for and was granted a voluntary nonsuit as to Count One. Plaintiff appeals. We affirm.

In general, plaintiff alleged that in 1975 he was the owner of 40 per cent of the stock in defendant corporation and that defendants Remmen and Highfield misrepresented to him the value of his stock and, as a result, he sold his interest in the corporation for substantially less than its actual value.

1.  Apparently plaintiff agrees that the Oregon Securities Act as it existed in 1975 did not expressly give a *seller* of securities a cause of action for deceit, but plaintiff contends that we should imply a cause of action.

In April, 1975, ORS 59.135, which is generally the same as § 101 of the Uniform Securities Act, stated:

> "It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security or the conduct of a securities business or for any person who receives any consideration from another person primarily for advising the other person as to the value of securities or their purchase or sale, whether through the issuance of analyses or reports or otherwise:
>
> "(1) To employ any device, scheme or artifice to defraud;
>
> " * * * * * ."

Although this statute makes it *illegal* for "any person" to defraud another person "in connection with the purchase or sale of any security," ORS 59.115 provided a *civil* remedy for this illegal activity only to *purchasers* of securities:

[69]

"(1) Any person who:

"(a) Offers or sells a security in violation of the Oregon Securities Law or * * *

"(b) Offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made * * * not misleading * * * is liable as provided in subsection (2) of this section *to the person buying the security* from him.

"(2) The *purchaser* may recover, in addition to costs and reasonable attorney fees at trial and on appeal:

" * * * * * *." (Emphasis added.)

In an article on the Oregon Securities Act, Professor Basye notes that although ORS 59.135 refers to both purchase or sale, under ORS 59.115 no remedy was given to a seller. Basye, *A Glimpse of Oregon's Blue Sky Legislation: The Revision of 1967,* 47 Or L Rev 403, 411 (1967). The explanation for this has been given by the drafters of the Uniform Securities Act:

" 'In so far as § 101 [of the Uniform Securities Act] applies to fraud in the *purchase* as well as the sale of a security, it follows the majority pattern of the state statutes, as well as SEC Rule 240.10b-5. Moreover, this seems correct in principle. Although the blue sky laws were originally directed against fraudulent *sellers,* experience at both state and federal levels has demonstrated that fraud is not a one-way street. The stockholder who is persuaded to *sell* by a corporate insider's *bearish* statements is defrauded no less than his brother who is persuaded to *buy* by a salesman's *bullish* statements.

" '*At the same time, there is no clear need to create any civil liability against buyers as distinct from sellers. Although the lower federal courts have uniformly implied a civil cause of action against fraudulent buyers under the SEC rule, the federal courts when applying federal law do not have at their disposal all of the common-law and equitable remedies of deceit and rescission which are available to the state courts without benefit of statute.* In the area of civil liability, moreover, it seems not only unnecessary but unwise to disturb the general jurisprudence

which has been developing with reference, for example, to the obligation of corporate insiders to make affirmative disclosure when purchasing from existing stockholders. On the other hand, the general law is not adequate to deal with flagrant cases of fraud by buyers on a *criminal* level, and there can, of course, be no public action for an *injunction* against such practices without specific statutory authority.' " Basye, *supra* at 411-12, note 49, *quoting* L. Loss & E. Cowett, Blue Sky Law 251-52 (1958). (Emphasis supplied in part.)

Both parties agree that ORS 59.135 is similar to federal Rule 10b-5. Plaintiff argues that we should therefore follow the federal cases and *imply* a cause of action in favor of sellers of securities. The federal scheme, however, differs from the Oregon Act as it existed at the time this cause of action arose in that the Oregon Act expressly granted a civil remedy to a purchaser, while no civil remedy was provided to a seller. The federal rules, on the other hand, are silent concerning civil remedies. By granting an express civil remedy to purchasers only, we believe the Oregon Legislature intended to exclude civil remedies for sellers, and this court will not establish a civil cause of action based on regulatory legislation when it discerns a legislative policy to exclude such a cause of action. *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978).

Plaintiff also argues that ORS 59.127, a 1975 amendment to the Securities Act giving a civil remedy to the seller as well as the buyer, should be applied retroactively.

It is the general rule in this state that in the absence of any indication to the contrary, legislative acts are not to be applied retroactively because to do so would change legal rights and responsibilities arising out of transactions which occur prior to the passage of the act. *Joseph v. Lowery,* 261 Or 545, 551-52, 495 P2d 273 (1972). On the contrary, prospective application is presumed unless there is a legislative intent to the contrary. *Id.; Kempf v. Carpenters and Joiners Union,*

229 Or 337, 341, 367 P2d 436 (1961). We detect no legislative intent to apply ORS 59.127 retroactively.

The trial court properly sustained defendants' demurrer to plaintiff's second count alleging a violation of the Oregon Securities Act.

■ The defendants Product Mfg. Co. and Duane Remmen have filed a cross-appeal in which they contend that plaintiff's Count One alleging common law fraud did not state a cause of action. The trial court held to the contrary and overruled defendants' demurrer to Count One. We do not reach the issue because the defendants cannot maintain a cross-appeal to challenge the sufficiency of the allegations in Count One. After the trial court overruled defendants' demurrer to Count One, the plaintiff moved for and received a judgment of voluntary nonsuit, which terminated the present action.

■ The defendants also challenge the trial court's disallowance of the costs of certain depositions which were contained in defendants' cost bill. The trial court apparently determined that these depositions were not necessary to defend the action and that therefore the costs were not allowable. *See Kendall v. Curl,* 222 Or 329, 353 P2d 227 (1960). Defendants have made no showing on appeal that the depositions were necessary other than a bare assertion to that effect. Under these circumstances, we defer to the judgment of the trial court.

Affirmed.